# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

JACKIE R. JOHNSON, )
)
      Plaintiff, )
)
      v. ) Case No. CIV-16-222-SPS
)
NANCY A. BERRYHILL, )
Acting Commissioner of the Social )
Security Administration,[1] )
)
      Defendant. )

## OPINION AND ORDER

    The claimant Jackie R. Johnson requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and REMANDED to the ALJ for further proceedings.

## Social Security Law and Standard of Review

    Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only his physical or mental impairment or impairments are of such

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Berryhill is substituted for Carolyn Colvin as the Defendant in this action.

severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he

---

[2] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity (RFC) to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born November 8, 1966, and was forty-seven years old at the time of the administrative hearing (Tr. 29, 184). He completed the twelfth grade, and has worked as truck driver and machine operator (Tr. 20, 216). The claimant alleges inability to work since December 31, 2007, due to depression, bipolar disorder, anxiety, and dyslexia (Tr. 215).

## Procedural History

On November 9, 2012, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. His applications were denied. ALJ J. Frederick Gatzke conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated December 2, 2014 (Tr. 13-21). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b), except that he could only occasionally stoop,

crouch, and kneel, and never climb ladders, ropes, or scaffolds. Additionally, the ALJ found that the claimant could frequently use the right dominant hand for reaching, handling, and fingering, but could not perform work requiring he drive a motor vehicle. Finally, the ALJ found that the claimant was able to perform simple one to two-step repetitive instructions, and that he could have incidental contact with the public and occasionally collaborate with coworkers (Tr. 17). The ALJ thus concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform, *e. g.*, motel housekeeper, conveyor line bakery worker, and small product assembler (Tr. 20-21).

## Review

The claimant argues that the ALJ erred by: (i) failing to incorporate moderate limitations with regard to concentration, persistence, and pace; and (ii) failing to properly evaluate the opinion of his treating physician assistant. Because the Court finds that the ALJ failed to properly evaluate the claimant's mental impairments in light of the records and opinion from the claimant's treating physician assistant, the decision of the Commissioner must be reversed and the case remanded for further proceedings.

The medical evidence reveals that the claimant had the severe impairments of right ganglionic cyst, right carpal tunnel syndrome, bipolar disorder, and panic disorder (Tr. 15). As relevant to this appeal, the medical records reveal that the claimant almost exclusively received treatment at the Rowland Flatt Hugo Rural Health Clinic by Physician Assistant Albert McLemore who was supervised by Dr. Teddy Rowland. Notes from Mr. McLemore indicate a lengthy treatment history for anxiety and

depression (Tr. 306-383, 411-439, 456-490). Although he did not report anxiety symptoms at every appointment, the treatment notes have recurring notations regarding the claimant being positive for anxiety (Tr., *e. g.*, 306, 316, 320, 348, 363, 419, 456, 460). One notation states that the claimant had previously been in counseling but that he was currently unable to afford to go (Tr. 314). The treatment notes further indicate that the claimant's anxiety and depression were characterized by agitation and feelings of hopelessness, aggressiveness, and that apparent triggers included crowds or public places (Tr. 320, 348, 363).

On January 16, 2013, Dr. Theresa Horton conducted a diagnostic interview and mental status examination of the claimant. Upon exam, she assessed him with bipolar disorder, type II, current episode depressed, as well as panic disorder (Tr. 393). She found that the claimant appeared capable of understanding, remembering, and managing most simple and complex instructions and tasks, and that he appeared capable of adequate social/emotional adjustment in many settings, including some occupational settings (Tr. 393). She did, however, state that he would likely not do well in settings that require a lot of public interface, or were high-paced or demanding, and would do better in settings where he was allowed to work on his own (Tr. 393).

On October 3, 2012, Mr. McLemore drafted a letter stating that the claimant had a long history of anxiety and panic attacks and was unable to stand very large crowds and join public places without getting extremely anxious (Tr. 448). He also noted that the claimant had a history of claustrophobia. As to medications, he stated that they had been "somewhat" helpful, but ultimately stated that the claimant was unable to work due to his

anxiety state (Tr. 448). On June 7, 2013, Mr. McLemore competed a "Treating Physician Mental Functional Assessment Questionnaire," in which he indicated that the claimant's diagnoses included severe anxiety and depression. He stated that the signs and symptoms of these diagnoses included mood swings such as crying to laughing frequently, that he cannot stand crowds, and that he has severe bouts of no bathing or getting out of bed lasting for days to weeks (Tr. 407). He then stated that the claimant was unable to hold a job due to social anxiety, dealing with people, and depression, and that he cannot deal with stress (Tr. 407).

State reviewing physicians determined that the claimant's affective disorder and anxiety disorder were nonsevere impairments (Tr. 73, 103), but then completed mental RFC assessments indicating that the claimant was moderately limited in the ability to understand and remember detailed instructions, maintain attention and concentration for extended periods, work in coordination with or in proximity to others without being distracted by them, accept instructions and respond appropriately to criticism from supervisors, and get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and ravel in unfamiliar places or use public transportation (Tr. 76-77, 106-107). Additionally, they indicated that the claimant was markedly limited in the ability to carry out detailed instructions and interact appropriately with the general public (Tr. 76-77, 106-107). One reviewer then stated that the claimant was capable of adjusting to a work environment that does not require good social skills, and that he may require more than the typical level of supervision initially but that he was capable of performing tasks independently once tasks were learned (Tr. 77). The second reviewer

then stated that the claimant had trouble with interpersonal relations and would perform better in a setting where he could work mostly alone and with limited requirements to interact with co-workers, and that he would not interact well with the public (Tr. 107).

In his written opinion, the ALJ summarized the claimant's hearing testimony as well as much of the medical evidence in the record (Tr. 17-18). In particular, he summarized Dr. Horton's consultative exam findings, and mental health treatment notes (Tr. 18-19). The ALJ found the claimant "not generally credible," because the claimant had not been referred for mental health treatment and he reported lifting a dead deer in October 2013 (Tr. 19). As to Mr. McLemore's opinions, the ALJ found them inconsistent with "treatment history or objective medical findings" and stated that the record demonstrated "occasional to rare" instances of the claimant having an anxious affect (Tr. 19). He then stated that Dr. Horton's evaluation showed "normal social functioning with a calm demeanor and no signs of distress in an unfamiliar situation," and proceeded to assign Mr. McLemore's opinion little weight (Tr. 19). He then gave both Dr. Horton's assessment and the opinions of the state reviewing physicians great weight, stating that the reviewing physician opinions were "internally consistent and well supported" (Tr. 19-20).

Social Security regulations provide for the proper consideration of "other source" opinions such as the opinions provided by Mr. McLemore herein. *See, e. g., Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (noting that other source opinions should be evaluated with the relevant evidence "on key issues such as impairment severity and functional effects" under the factors in 20 C.F.R. §§ 404.1527, 416.927), *quoting* Soc.

Sec. Rul. 06-03p, 2006 WL 2329939 at *3, *6 ("[T]he adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case."). The factors for evaluating opinion evidence from "other sources" include: (i) the length of the relationship and frequency of contact; (ii) whether the opinion is consistent with other evidence; (iii) the extent the source provides relevant supporting evidence; (iv) how well the source's opinion is explained; (v) whether claimant's impairment is related to a source's specialty or area of expertise; and (vi) any other supporting or refuting factors. *See* Soc. Sec. Rul. 06-03p, at *4-5; 20 C.F.R. § 404.1527(d). *See also Anderson v. Astrue*, 319 Fed. Appx. 712, 718 (10th Cir. 2009) ("Although the ALJ's decision need not include an *explicit discussion* of each factor, the record must reflect that the ALJ *considered* every factor in the weight calculation.") [emphasis in original] [internal citations omitted]. Here, the ALJ made no reference to Soc. Sec. Rul. 06-03p whatsoever, nor did he apply the appropriate factors for evaluating Mr. McLemore's opinion. *See, e. g., Anderson v. Astrue*, 319 Fed. Appx. 712, 718 (10th Cir. 2009) ("Although the ALJ's decision need not include an *explicit discussion* of each factor, the record must reflect that the ALJ *considered* every factor in the weight calculation."). The ALJ's rejection of an other source opinion, without appropriate consideration, represents a significant misunderstanding with regard to the evidence and directly relates to findings regarding the claimant's RFC. In particular here, there is considerable evidence and testimony regarding the claimant's social anxiety and

problems being around others, yet the ALJ took pains to minimize or even ignore much of it. *See, e. g., Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (noting that other source opinions should be evaluated with the relevant evidence "on key issues such as impairment severity and functional effects" under the factors in 20 C.F.R. §§ 404.1527, 416.927), *quoting* Soc. Sec. Rul. 06-03p, 2006 WL 2329939 at *3, *6 (Aug. 9, 2006) ("[T]he adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.").

Because the ALJ failed to properly analyze the evidence of record as to the claimant's mental limitations, the Commissioner's decision must be reversed and the case remanded for further analysis by the ALJ. If such analysis results in adjustments to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

## Conclusion

The Court hereby FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner is accordingly REVERSED and the case is REMANDED for further proceedings consistent herewith.

**DATED** this 25th day of September, 2017.

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**